Barbara C. GRYGIEL and Janet M. Nahorn,
Plaintiffs-Appellants-Petitioners,

v.

MONCHES FISH & GAME CLUB, INC.,
Defendant-Respondent,

Karl J. SCHEIFE, Defendant.

Supreme Court

*No. 2008AP2028. Oral argument February 11, 2010.
—Decided July 20, 2010.*

2010 WI 93

(Also reported in 787 N.W.2d 6.)

For the plaintiffs-appellants-petitioners there were briefs by *John A. Rothstein* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *John A. Rothstein.*

For the defendant-respondent there was a brief by *Lance S. Grady, Daniel K. Miller,* and *Grady, Hayes & Neary, LLC,* Waukesha, and oral argument by *Lance S. Grady.*

An amicus curiae brief by *Debra Peterson Conrad* and *the Wisconsin REALTORS® Association,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a decision of the court of appeals[1] affirming the circuit court's decision[2] denying Barbara C. Grygiel's and Janet M. Nahorn's (collectively, Grygiel) motion for summary judgment and dismissing Grygiel's complaint.[3] Monches Fish & Game Club, Inc. (the Club) has an easement over Grygiel's property "for the purpose of

---

[1] *Grygiel v. Monches Fish & Game Club, Inc.,* 2009 WI App 102, 320 Wis. 2d 550, 770 N.W.2d 749.

[2] The Honorable David C. Resheske of Washington County presided.

[3] Any counterclaims Scheife may have alleged were not decided by the circuit court and, therefore, are not before us.

---

ingress and egress as a means of access" to the Club's property. Grygiel alleges that Karl J. Scheife (Scheife), a Club member, and several invitees, crossed the easement and entered the Club's land for the purpose of accessing property located south of the Club's land. The issues in this case are whether Scheife's use of the easement to achieve access to property other than the Club's property contravened the express terms of the Club's easement and, if so, whether Scheife committed trespass on Grygiel's property by that act. We conclude that Scheife contravened the express terms of the Club's easement by entering Grygiel's property without consent and in doing so he unlawfully trespassed on Grygiel's land. Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for entry of judgment granting Grygiel a declaration of trespass and an award of nominal damages.

## I. BACKGROUND

¶ 2. The relevant facts are undisputed. Grygiel owns and resides on 32 acres of property in Washington County, the westerly side of which has access to and abuts Erin Road, a public roadway.[4] The Club owns 120 acres of land east of Grygiel's property, a portion of which abuts Grygiel's property. No portion of the Club's property abuts a public roadway.

---

[4] To assist the reader, we have attached a diagram of the property at issue in this case. The diagram is attached as Exhibit A. This exhibit is a reproduction of an exhibit Grygiel submitted to the circuit court in support of her motion for summary judgment. The parcel labeled "Monches 120 acres" is what we refer to as the Club's property. We stress that this exhibit is not to scale; rather, it is a simplified diagram of the lots and easement at issue.

¶ 3.  The Club, a non-stock corporation, has 75 members and permits its members to use its 120 acres for hunting year round. Additionally, each member is permitted to bring family members, invitees and individuals interested in joining the Club onto the Club's property.

¶ 4.  On March 22, 1973, Grygiel's predecessors in interest, Alta and David Fruit, granted the Club's predecessors in interest, Melvin and Arline Voigt, an easement appurtenant to the Club's property, permitting access to the Club's land via a 40–foot strip across Grygiel's land. The written easement recorded with the register of deeds provides in relevant part:

> David J. Fruit and Alta R. Fruit, his wife, hereby grant to Melvin Voigt and Arline Voigt, his wife, and to their heirs and assigns, an easement for the purpose of ingress and egress as a means of access to the NW-1/4 of SE-1/4, the SW-1/4 of NE-1/4, and NE-1/4 of SW-1/4, all in Section 31, Township 9 North, Range 10 East.
>
> This easement shall extend from the above described land West to Erin Road and shall be 40 feet in width.

It is undisputed that the legal description in the easement describes the Club's 120 acres. Grygiel does not dispute that such easement permits the Club's members and its invitees to cross the easement strip to access the Club's land.

¶ 5.  On November 24, 2006, Scheife, who is a Club member, and seven other non-Club members, were deer hunting on a 100–acre parcel of land owned by the Unrein family (Unreins). Such 100–acre parcel is located approximately one-quarter mile south of the Club's land. Immediately to the north of the 100–acre parcel is another 40–acre parcel also owned by the

444

Unreins. Portions of the 40–acre parcel borders the Club's land to the north, Grygiel's land to the west and the Unreins' 100–acre parcel to the south. Scheife rents a home on the Unreins' land and his lease gives him hunting privileges on all of the Unreins' land.

¶ 6.　After hunting the Unreins' 100–acre parcel, Scheife and the other hunters accompanying him decided to hunt on the Unreins' 40–acre parcel. The hunters drove from the Unreins' 100–acre parcel across the Club's easement, accessed via Erin Road, to the Club's property. They parked their vehicles on the Club's property and from there crossed the Club's property, which required the hunters to cross over a fence, and entered the Unreins' adjacent 40–acre parcel. It is undisputed that the hunters did not hunt on the Club's property that day. It is further undisputed that the hunters could have accessed the Unreins' 40–acre parcel directly from the 100–acre parcel, but instead chose to access the 40–acre parcel from the north via the Club's property.[5] Scheife said that he and his invitees crossed the Club's easement "for the express purposes of hunting the [Unreins'] 40 acres to the south."

¶ 7.　After the group was done hunting, they returned to the Unreins' 100–acre parcel. From there two members of the hunting party drove Scheife back toward the Club's easement, with the intention of retrieving Scheife's vehicle from the Club's property. As they approached the easement from Erin Road, they saw that Grygiel had blocked access to the easement. Grygiel then called the sheriff's department and a deputy arrived shortly thereafter.

---

[5] Apparently, this was a strategic decision made for purposes of driving deer in a particular direction.

¶ 8.   On March 9, 2007, Grygiel filed suit against the Club and Scheife alleging common law trespass and breach of the terms and covenants set forth in the written easement.[6] Specifically, with respect to the trespass claim, Grygiel alleged that Club member Scheife's use of the easement to enter the Unreins' land

---

[6] In its complaint, Grygiel also alleged a violation of a final judgment entered in a 1990 action declaring the Club's rights under the easement. The Club commenced the 1990 action seeking a declaration of rights under the written easement. The Club filed the suit in response to complaints by Grygiel regarding use of the easement by the Club's neighboring farmers to transport farm vehicles to their property. The final judgment (1991 judgment) declared the parties have the following rights under the easement:

a. The Defendants[, the Club,] are owners of land which is subject to an easement in favor of the predecessors in title of the Plaintiff[, Grygiel].

b. The easement was granted by Defendants' predecessor in title and is a recorded document dated March 22, 1973. It is recorded as Document 341509 of Volume 539 of Records at Page 507 in the Washington County Register of Deeds Office.

c. Under the written document, [the Club] has a right for ingress and egress to [the Club's] land over [Grygiel's] land within the 40–foot area described in the easement, but has no other right or interest in [Grygiel's] lands.

d. The written instrument does not grant [the Club] the right to park on the easement. Therefore, [the Club] may not park or allow parking of vehicles on (or within the area of) the easement.

e. The easement may be used for ingress and egress to [the Club's] property by members of [the Club], its invitees, services vehicles and emergency vehicles.

f. [The Club] may not extend the use of its easement rights across [Grygiel's] lands to any parties other than as stated in the preceding subsection (e). Without limitation, [the Club] may not grant the use of the easement to still other third persons (e.g. farmers) as a means of gaining access to other properties beyond [the Club's] land.

446

via the Club's property was "outside of the limited permission set forth in the Easement, and thus, since

> g. [The Club's] vehicles may turn around within the easement provided the vehicles do not go outside the 40–foot easement.

> [h]. [The Club] may improve the current roadway within the area described in the easement but any improvements shall only be for purposes of ingress and egress.

In the instant action, on October 1, 2007, Grygiel filed a motion for partial summary judgment arguing that Scheife's use of the easement to cross onto the Unreins' property violated the 1991 judgment. Specifically, she argued that pursuant to the 1991 judgment "neither the Club nor any of its members have the right to grant the use of the easement over to [Grygiel's] property to third persons as a means of gaining access to other properties beyond the Club's land listed in the easement." Moreover, Grygiel argued that "neither the Club nor any of its members have the right *themselves*" to use the easement in such a manner.

On February 5, 2008, the circuit court denied the motion concluding that "the language of the judgment does not restrict the [Club] or its invitees from using the easement to gain access to other properties, only that it restricts third persons from doing so." Moreover, during a hearing on Grygiel's second summary judgment motion, the circuit court dismissed the claim for enforcement of the 1991 judgment.

It appears as though an argument could be made that Scheife's actions violated the 1991 judgment. The judgment specifically stated that the "easement may be used for ingress and egress to [the Club's] property," that the Club "may not extend the use of its easement rights," including granting use of the easement "as a means of gaining access to other properties beyond [the Club's] land." Scheife, who is a Club member, used the easement along with third parties to gain access to the Unreins' 40 acres—property beyond the Club's land.

However, we decline to decide whether Scheife's acts violated the 1991 judgment because Grygiel did not raise the issue for our review. Accordingly, we decide this case based only on Grygiel's alternative claims of breach of the express written easement and common law trespass.

447

their conduct on [Grygiel's] Property was without permission, such conduct constituted a trespass of [Grygiel's] Property." In his answer, Scheife admitted he "did not ask for, nor did he receive, any permission from [Grygiel] . . . to come on [Grygiel's] Property." Grygiel stipulated to limit her damages to an award of nominal damages, upon a declaration of trespass.[7]

¶ 9.  Grygiel moved for summary judgment. In a written decision, the circuit court denied Grygiel's motion, concluding that "the defendant, Mr. Scheife, properly used the easement granted to the [Club] as a means of gaining access to the dominant estate. The fact that he subsequently entered the adjoining property, with permission, does not impermissibly extend the use of the easement." As a result, the circuit court concluded that Grygiel's "claim for trespass and breach of easement cannot be proven and must be dismissed."

¶ 10.  The court of appeals affirmed, relying on its interpretation of *Millen v. Thomas,* which held that "an easement for a specified purpose may not be enlarged such that an added burden is placed upon the servient estate," 201 Wis. 2d 675, 685, 550 N.W.2d 134 (Ct. App. 1996). The court of appeals focused its analysis on whether Scheife's use of the easement created an additional burden on the servient estate, Grygiel's property.

---

[7] The stipulation provides in relevant part:

[I]n the event the Court determines that summary judgment can be granted on the issue the plaintiffs have put before the Court, and the Plaintiffs' motion is granted (which includes a dismissal of the one counterclaim as moot), then by this instrument the plaintiffs hereby stipulate to withdraw their request for actual and punitive damages in this case—and the need for any trial thereon—in exchange for the entry of an award of nominal damages on the declaration of a trespass together with normal statutory costs in the plaintiffs' favor.

*Grygiel v. Monches Fish & Game Club, Inc.*, 2009 WI App 102, ¶ 14, 320 Wis. 2d 550, 770 N.W.2d 749. The court of appeals concluded:

> [T]he undisputed facts indicate that when Club member Scheife and his invitees traveled the access road[, the easement,] to the Club's property, the burden on the servient estate was no greater than it would have been had the hunters remained on the Club property. . . . Consequently, Grygiel's claims for misuse of the easement were properly dismissed.

*Id.*, ¶ 15.

¶ 11. We granted review and now reverse.

## II. DISCUSSION

### A. Standard of Review

■■

¶ 12. "We review a grant of summary judgment independently, applying the same methodology as the circuit court." *City of Janesville v. CC Midwest, Inc.*, 2007 WI 93, ¶ 13, 302 Wis. 2d 599, 734 N.W.2d 428 (citing *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶ 14, 296 Wis. 2d 1, 717 N.W.2d 835). In order to determine whether summary judgment is appropriate in this case, we must interpret the document creating the 1973 easement. *See AKG Real Estate*, 296 Wis. 2d 1, ¶ 14. Interpreting the language of a deed granting an easement is a question of law we review independently, but benefiting from the analyses of both the circuit court and the court of appeals. *See id.*

### B. General Principles of Easement Law

■

¶ 13. "An easement is a liberty, a privilege, or an advantage in lands without profit and distinct from an

ownership." *Union Falls Power Co. v. Marinette Cnty.*, 238 Wis. 134, 138, 298 N.W. 598 (1941). Easements may be classified as either appurtenant or in gross. *Gojmerac v. Mahn*, 2002 WI App 22, ¶ 18, 250 Wis. 2d 1, 640 N.W.2d 178; *see also Union Falls*, 238 Wis. at 138 ("Easements are of two classes, easements appurtenant and easements in gross."). In this case, our focus is on easements appurtenant as it is undisputed that the 1973 deed granted an easement appurtenant. Accordingly, an expanded review of the characteristics of easements appurtenant will be helpful.

¶ 14.  " 'Appurtenant' means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land." *Gojmerac*, 250 Wis. 2d 1, ¶ 18 (citing Restatement (Third) of Prop.:  Servitudes § 1.5, at 30 (2000)). "An appurtenant easement creates two distinct property interests:  the dominant estate . . . and the servient estate." *Id.*, ¶ 19. The dominant estate is the estate that "enjoys the privileges granted by an easement," and the servient estate is that estate upon which the privileges are exercised. *Id.* (citing *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 566 N.W.2d 158 (Ct. App. 1997); *Reise v. Enos*, 76 Wis. 634, 638, 45 N.W. 414 (1890) ("[L]ot 3, to which the easement is appurtenant, is the dominant estate, and lot 4, over which the easement is enjoyed, is a servient estate.")). "The dominant owner does not obtain an estate in the servient property, but only a right to use the land consistent with the general property rights of the servient owner." *Id.*

¶ 15.  "It is the essence of an appurtenant easement that it exists for the benefit of the dominant estate alone." *Id.*, ¶ 22 (citing *Vliet v. Sherwood*, 35 Wis.

229, 235 (1874)). It is well-settled that an easement appurtenant "can be used only in connection with the dominant estate to which it is appurtenant." *Id.* (citing *S.S. Kresge Co. of Mich. v. Winkelman Realty Co.,* 260 Wis. 372, 376, 50 N.W.2d 920 (1952); Restatement (Third) of Prop.: Servitudes § 4.11, at 619 (2000)).[8] *Sicchio v. Alvey,* 10 Wis. 2d 528, 103 N.W.2d 544 (1960), reiterated this principle. *Sicchio* explained that "a right of way appurtenant to a particular lot cannot be used as a mode of access to another lot to which it is not appurtenant, even though there is no resulting additional burden." *Id.* at 537.

¶ 16. It is also well-settled that "the dominant estate cannot be enlarged." *Gojmerac,* 250 Wis. 2d 1, ¶ 23. *Reise* first stated this principle as follows: "[I]f a person has a right of way over the land of another to a particular close, he cannot enlarge it or extend it to other closes." *Reise,* 76 Wis. at 639.

¶ 17. In *Reise,* Cook originally owned lots 3 and 4. *Id.* at 636. Cook sold lot 3 to Reise and also granted Reise an express easement over lot 4 to the west so that Reise could have ingress and egress to Clinton Street. *Id.* Later, Reise acquired lot 2 to the east and then sold the dominant estate, lot 3, but reserved the right to use the easement across lot 4. *Id.* Reise argued that the terms of the express easement granted him the right to use the easement to access lot 2. In its discussion, the court noted: "[T]he simple question presented is, Can

---

[8] Restatement (Third) of Property: Servitudes § 4.11 (2000) states: "Unless the terms of the servitude determined under § 4.1 provide otherwise, an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate."

451

that right be maintained upon the language of the deeds?" *Id.* at 637. The court concluded that such right could not be maintained on the language of the deeds because Reise's use of the easement to access lot 2, a non-dominant parcel, was improper as it "enlarge[d] and extend[ed] the right over the servient estate to another lot." *Id.* at 639.

¶ 18.   The above-stated principle applies to the extent that it does not conflict with the express terms of the easement. *See* Restatement (Third) of Prop.:   Servitudes § 4.11 (explaining that an appurtenant easement may not be used for the benefit of property other than the dominant estate "[u]nless the terms of the servitude . . . provide otherwise").

■■

¶ 19.   A written easement holder has the right to use the easement in accordance with the express terms of the easement grant. *Hunter v. McDonald,* 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977). Determining whether an easement holder's use of an easement contravenes the express terms of the easement grant requires us to construe the document that grants the easement, often, a deed. *Id.* at 342–43; *Reise,* 76 Wis. at 637.

■

¶ 20.   The "first step in construction of a deed is to examine what is written within the four corners of the deed, for this is the primary source of the intent of the parties." *Rikkers v. Ryan,* 76 Wis. 2d 185, 188, 251 N.W.2d 25 (1977). If the language within the four corners of the deed is unambiguous, the court will not look further. *Id.* However, if the language granting the easement is ambiguous, meaning the deed is susceptible to more than one reasonable interpretation in regard to the grant of easement, the court may resort to extrinsic evidence in an effort to determine the intent of the

parties. *Gilbert v. Geiger,* 2008 WI App 29, ¶ 10, 307 Wis. 2d 463, 747 N.W.2d 188.

¶ 21.   In addition to the above-stated principles of law, the Club and Scheife contend that to determine whether certain conduct violates the express terms of an easement, under *Millen* we are required to analyze the added burden, if any, imposed on the servient estate. The Club and Scheife misperceive the import of *Millen.*

¶ 22.   In *Millen,* the Millens purchased a lakefront lot from Krumme, and granted Krumme a 12–foot wide easement "for ingress and egress from Beaver Lake Road to Beaver Lake," over the property. *Millen,* 201 Wis. 2d at 680. The easement gave Krumme lake access from Krumme's remaining off-lake parcel. *Id.* "Thus, the Millens' lakefront lot became the servient estate and Krumme's off-lake lot became the dominant estate under the law of easements." *Id.* Krumme eventually "conveyed her remaining off-lake dominant estate to Thomas together with the easement." *Id.* at 681. Thomas owned two additional off-lake lots that surrounded the Krumme off-lake lot on the north, east and west sides. *Id.* at 680. "Thomas executed a quit-claim deed to herself by which she merged the legal description of the off-lake dominant estate parcel which she had purchased from Krumme with the surrounding off-lake" parcels she previously owned. *Id.* at 681.

¶ 23.   The Millens' filed a declaratory action seeking to extinguish the easement, alleging that "Thomas's subsequent merger of the dominant estate with the surrounding land" she previously owned placed an additional burden on the servient estate that required termination of the easement. *See id.* at 683. As the court of appeals reasoned through the legal questions presented, the court explained that "an easement for a

specified purpose may not be enlarged such that an added burden is placed upon the servient estate." *Id.* at 685 (citing *S.S. Kresge Co.,* 260 Wis. at 376–77). The court then explained that the "mere fact that the owner of the dominant estate now owns other abutting lands" is insufficient to demonstrate an added burden on the servient estate sufficient to result in the termination of the easement. *Id.* The court concluded that the Millens failed to demonstrate that an additional burden was placed on the servient estate such that "continued use of the easement is precluded as a matter of law." *Id.* at 685, 683.

¶ 24. *Millen* established that extinguishing an easement is appropriate when the additional burden imposed on the servient estate is so violative of the terms of the express easement that "continued use of the easement is precluded as a matter of law." *Id.* at 683. Stated otherwise, *Millen* is a remedies case. Millen asked the court to extinguish the easement so that no use could be made of it whatsoever. *Millen* did not decide that an easement must be subject to an undue additional burden before a court can conclude that the terms of an express easement have been contravened.

¶ 25. Correctly understood, *Millen*'s use of a burden analysis applies to those occasions when a servient estate owner seeks the remedy of extinguishment of an express easement. *Millen*'s burden analysis does not apply when the servient estate owner simply seeks a declaration that the terms of an express easement have been contravened. *See id.; accord Gojmerac,* 250 Wis. 2d 1, ¶¶ 22–24, 47 (concluding that two parcels of land had the right to use the easement under the express terms of the easement grant "until such time as the Gojmeracs prove that the easement should be

extinguished for a particular, recognized reason, such as that the use has increased the burden on the servient estate").

¶ 26.   We further note that *S.S. Kresge Co.,* cited by *Millen* for the proposition that the servient estate may not be subjected to an added burden, similarly does not lead to the conclusion that we analyze whether an added burden is imposed on the servient estate when the gravamen of the complaint is that the terms of an express easement have been contravened. This is so because *S.S. Kresge Co.* arose in the context of an easement that was obtained by prescription.

¶ 27.   In *S.S. Kresge Co.,* the easement was in an alleyway leading to a barbershop located on lot 2. *S.S. Kresge Co.,* 260 Wis. at 376. The defendants then began to use lot 2, the dominant estate, as a retail outlet for appliances and as a storage warehouse for other merchandise that was to be sold elsewhere, which extended beyond lot 2. *Id.* The court concluded that this created "an added burden upon the servient estate." *Id.* at 377. In so concluding, the court explained that "[t]he owner of the servient estate is not required to wait until his property has been unreasonably burdened and *thereby permit additional rights to be gained by prescription* but he may proceed when any additional burden is placed upon his property." *Id.* (emphasis added).

¶ 28.   In the context of a prescriptive easement, where the rights of the parties are not expressly set forth in a written document but rather are created through use, the assessment of whether an additional burden has been placed upon a prescriptive easement is appropriate due to the nature of a prescriptive easement. That is, the easement itself arises through use and an assessment of the burden that use has placed on

the land of the servient estate over a period of time. *See Ludke v. Egan*, 87 Wis. 2d 221, 230–31, 274 N.W.2d 641 (1979) (setting forth the elements of an easement by prescription). Because the scope of a prescriptive easement is constrained by the use that gave rise to the easement's creation, whether a prescriptive easement holder unreasonably placed an additional burden on the servient estate through use of the easement is relevant to determining whether the lawful scope of a prescriptive easement has been unlawfully extended.[9] *See S.S. Kresge Co.*, 260 Wis. at 376–77; *Red Star Yeast & Prods. Co. v. Merch. Corp.*, 4 Wis. 2d 327, 339, 90 N.W.2d 777 (1958).

¶ 29. However, in the context of an express easement, the foundational principles that underlie the creation of the easement are much different from those

---

[9] Our conclusion is supported by other prescriptive easement cases discussing whether the servient estate has been subjected to an added burden. *See, e.g., Knuth v. Vogels*, 265 Wis. 341, 345, 61 N.W.2d 301 (1953) (concluding that an easement by prescription for a driveway was not unlawfully extended by placing an increased burden on the servient estate when the easement holder replaced the original cinder driveway with a concrete driveway).

Similarly, assessing burden on the servient estate of an easement of necessity is proper. Easements of necessity do not contain express terms; rather, an easement of necessity may be granted when an easement " 'is required for the complete and beneficial use of the land.' " *Richards v. Land Star Grp., Inc.*, 224 Wis. 2d 829, 839, 593 N.W.2d 103 (Ct. App. 1999) (quoting 25 Am. Jur. 2d Easements & Licenses § 92, at 664 (1996)). *Richards* correctly noted that "the issue here is not whether a written easement grant includes utility installation," but in the absence of express terms, the issue is whether the utility easement was necessary and "whether utility installation would overburden the servient estate." *Id.* at 839, 842.

principles that permit the creation of an easement by prescription. Moreover, requiring a showing of added burden in regard to proving that the terms of an express easement have been contravened encourages "difficult litigation over the question whether increased use unreasonably increases the burden on the servient estate." Restatement (Third) of Prop.: Servitudes § 4.11 cmt. b. Grygiel notes this concern and asserts that the necessary case-by-case determination of whether certain conduct imposed an additional burden on the servient estate in the context of express easements would eliminate "[t]he sanctity of the owner's private property, the workmanship of the written easement, and the certainty of prior rights."

¶ 30.   We agree that when faced with an express easement, a court's focus should be on the language of the easement grant, and not on the presence or absence of added burden, in determining whether certain conduct contravenes the terms of the express easement. That analysis honors the expectations of the contracting parties and creates predictability in the respective parties' property rights. Parties who negotiate a deed granting an express easement expect courts to enforce its terms, which we conclude the law requires. *See Rikkers,* 76 Wis. 2d at 188.

C. The 1973 Easement

¶ 31.   As an initial matter, for the reasons we set out herein, we reject the Club's assertion that in order to prevail Grygiel must demonstrate that Scheife's conduct imposed an added burden on Grygiel's property. *Millen's* burden analysis is not applicable here. First,

457

the Club has an express written easement granted by deed, not an easement by prescription, over Grygiel's property. Moreover, Grygiel does not seek to extinguish the Club's express easement as a matter of law; rather, Grygiel seeks a declaration that Scheife's conduct contravened the express terms of the easement and that by such conduct Scheife committed trespass. Because we are not confronted with a prescriptive easement and have not been called on to determine whether the Club's easement must be extinguished as a matter of law, we conclude that any added burden analysis is misplaced in this case. *See supra* ¶¶ 21–30.

¶ 32.   Instead, we have been called on to determine whether Scheife contravened the Club's express easement by using the easement to access property other than the Club's property.[10] Case law directs us to resolve this issue by examining the language of the express easement. *See Hunter,* 78 Wis. 2d at 342–43; *Reise,* 76 Wis. at 637. As such, our consideration focuses on "what is written within the four corners of the deed" creating the express easement. *Rikkers,* 76 Wis. 2d at 188.

¶ 33.   We conclude that the easement is unambiguous and that Scheife's use of the easement to access the Unreins' 40 acres contravened the express terms of

---

[10] Both parties also argued about something referred to as a "home base" exception. It is unclear what exactly the home base exception is. Without so defining in its brief, Grygiel argued that "this Court should reject the Club's proffered 'home base exception.' " However, the Club's brief stated that "the claimed 'home base exception' . . . is a creation of Grygiel that misstates the position of the Club relative to this matter." Because neither party supports the adoption of such exception, we decline to address this argument.

the easement. By using the easement to access the Unreins' 40 acres, Scheife and his invitees used the easement for the benefit of property other than the dominant estate and effectively enlarged the dominant estate to include the Unreins' 40 acres contrary to established easement law.

¶ 34. The Club has an easement over a 40–foot wide strip of Grygiel's land "for the purpose of ingress and egress as a means of access" to the Club's property. By its express terms, this easement unambiguously limits the Club's use of the easement such that it may be used only to access or to leave the Club's property. As such, use of the easement to access any other property is outside the grant of this easement.

¶ 35. Here, it is undisputed that Scheife along with his invitees used the easement as a means of access to the Unreins' 40 acres, not the Club's property. Indeed, this point was confirmed by Scheife's own testimony at the circuit court. He averred as follows: "On November 26th, 2006, I did drive myself and two other people over the easement to the Monches Fish & Game Club for the express purposes of hunting the [Unreins'] 40 acres to the south. I have never denied that." As such, we conclude that Scheife's conduct contravened the express terms of the easement.

¶ 36. As stated, the deed in this case granted an easement appurtenant for a specifically stated purpose—a means of access to the Club's property. The Club's property, the estate that enjoys the privileges granted by the easement, is the dominant estate, and Grygiel's property, the estate that permits the exercise of those privileges, is the servient estate. *See Gojmerac,* 250 Wis. 2d 1, ¶ 19. By using the easement to access the Unreins' 40 acres, Scheife and his invitees used the easement to benefit property other than the dominant

estate, contrary to well-settled law that an express, appurtenant easement "exists for the benefit of the dominant estate alone." *Id.*, ¶ 22.

¶ 37.   Permitting the Club, its members and invitees to use the easement as Scheife did here would fly in the face of our previous statement in *Sicchio,* where we explained that "a right of way appurtenant to a particular lot cannot be used as a mode of access to another lot to which it is not appurtenant, even though there is no resulting additional burden." *Sicchio,* 10 Wis. 2d at 537. Our discussion in *Sicchio* explicitly prohibits use of an express access easement to access any property other than the dominant estate. *Sicchio* further supports our conclusion above that Grygiel need not demonstrate that the use of the easement resulted in an additional burden to Grygiel's property in order to prevail.

¶ 38.   Moreover, were we to permit the Club, its members and invitees to use the easement to access property other than the Club's property, we would be permitting the easement holder to "enlarge and extend the right over the servient estate to another lot." *See Reise,* 76 Wis. at 639. Enlarging the dominant estate to include the Unreins' 40 acres would contradict our past precedent. *See Gojmerac,* 250 Wis. 2d 1, ¶ 23 ("[T]he dominant estate cannot be enlarged.").

¶ 39.   Because we have concluded that Scheife's use of the easement to access property other than the Club's contravened the express terms of the Club's easement, we must now determine whether Scheife is liable to Grygiel for trespass as a result of that act.

D. General Principles of Trespass Law

■■■■■■

¶ 40.   When an easement holder contravenes the terms of an express easement, such contravention may

result in a trespass on the servient estate owner's property. " 'One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally [] enters land in the possession of the other, or causes a thing or a third person to do so . . . .' " *Prahl v. Brosamle,* 98 Wis. 2d 130, 146, 295 N.W.2d 768 (Ct. App. 1980) (quoting Restatement (Second) of Torts § 158, at 277 (1965)); *see also Manor Enters., Inc. v. Vivid, Inc.,* 228 Wis. 2d 382, 389–90, 596 N.W.2d 828 (Ct. App. 1999) (applying Restatement (Second) of Torts § 158). The plaintiff has the burden to establish "intentional entry and a right to possession." *Manor,* 228 Wis. 2d at 391 (citing *Prahl,* 98 Wis. 2d at 146).

¶ 41.   "[C]onsent to entry onto the land is a defense to an action for trespass . . . ." *Id.*; *cf. Hofflander v. St. Catherine's Hosp., Inc.,* 2003 WI 77, ¶ 105, 262 Wis. 2d 539, 664 N.W.2d 545 ("Under Wisconsin law, a trespasser is 'a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.' " (quoting *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 843, 236 N.W.2d 1 (1975)). Consent may be given expressly or may be implied from the conduct of the plaintiff, from the relationship of the parties or from custom. *Manor,* 228 Wis. 2d at 391 (citing *Prahl,* 98 Wis. 2d at 147). "[I]t is the burden of a defendant asserting consent to plead and prove it." *Id.* at 392 (citing W. Page Keeton et al., *Prosser and Keaton on Torts* § 18 n.2, at 112 (5th ed. 1984); 75 Am. Jur. 2d § 216, at 164).

¶ 42.   As stated, the holder of an express easement has consent to use the easement in accordance with the terms of the easement grant. *Hunter,* 78 Wis. 2d at 343.

Beyond this, the owner of the servient estate has the "right to exclude others from his or her land" to protect "his or her land from trespass." *Jacque v. Steenberg Homes, Inc.,* 209 Wis. 2d 605, 617–18, 563 N.W.2d 154 (1997) (discussing the damages that may be awarded for intentional trespass). It follows then that when an easement holder's use of an express easement contravenes its express terms, absent consent or some other circumstances permitting lawful entry on the grantor's property, the easement holder may be held liable for trespass.

¶ 43. The law of other jurisdictions supports this conclusion. In *Davenport v. Lamson,* 38 Mass. 72 (1838), the defendant acquired a right of way over plaintiff's property, which was appurtenant to his three-acre lot. The defendant subsequently acquired a nine-acre lot, which was "adjoining to and beyond the three acre lot." *Id.* at 73. The court concluded that the defendant's use of the easement as a means of going to and from his nine-acre lot violated the terms of the easement. *Id.* at 74. As such, "the entry was unlawful and constituted a trespass." *Id.* at 75; *see also Tuthill Ranch, Inc. v. United States,* 381 F.3d 1132, 1134 (Fed. Cir. 2004) ("[M]isuse of an easement may be a trespass to real property."); *Diocese of Trenton v. Toman,* 70 A. 606, 609 (N.J. Ch. 1908) (citing with support the holding in *Davenport*); *Selvia v. Reitmeyer,* 295 N.E.2d 869, 874 (Ind. Ct. App. 1973) (concluding that a right-of-way easement used by the easement holder to access "other premises to which the easement [was] not appurtenant" "constitute[d] a trespass"); Restatement (Third) of Prop.: Servitudes § 8.3 cmt. b, at 496 (2000) ("[U]nauthorized use of an easement is generally a trespass to the servient estate for which damages and injunctive relief are normally granted.").

¶ 44. We have determined that "nominal damages are always appropriate for a trespass." *Jacobs v. Major,* 139 Wis. 2d 492, 530, 407 N.W.2d 832 (1987) (citing *Murphy v. City of Fond du Lac,* 23 Wis. 365, 366, 23 N.W. 365 (1868)); *see also Prahl,* 98 Wis. 2d at 152. However, if proved, compensatory damages may also be awarded. *Jacobs,* 139 Wis. 2d at 530.

¶ 45. We conclude that Scheife is liable to Grygiel for trespass because he intentionally entered Grygiel's land without consent. Grygiel, as the landowner, has the right to possession of her land. Moreover, it is undisputed that Scheife intentionally entered Grygiel's property in order to reach the Unreins' 40 acres. Indeed, Scheife concedes this point. As such, Grygiel has met her burden of showing that Scheife intentionally entered land of which she had a right to possession. *See Manor,* 228 Wis. 2d at 391.

¶ 46. Because Grygiel has met her burden, Scheife is liable for trespass unless he can show he had consent to enter Grygiel's land. *See id.* We conclude that Scheife failed to meet his burden. Scheife had consent to use the express easement in accordance with the terms of the easement grant. *See Hunter,* 78 Wis. 2d at 343. Because, as we concluded above, Scheife's use of the easement contravened its express terms, the easement did not provide Scheife consent to enter Grygiel's property. Scheife has not pointed to anything in the record other than the express terms of the easement indicating that either he or his invitees had consent to enter Grygiel's property to access the Unreins' 40 acres. Moreover, in Scheife's answer to Grygiel's complaint, he admitted that he did not have consent to enter Grygiel's property. Accordingly, Scheife is liable for trespass.

¶ 47. Because nominal damages are appropriate for trespass, *Jacobs,* 139 Wis. 2d at 530, and because Grygiel stipulated to limit her damages to "an award of nominal damages on the declaration of a trespass," we conclude that Grygiel is entitled to an award of nominal damages.

## III. CONCLUSION

¶ 48. The issues in this case are whether Scheife's use of the easement to achieve access to property other than the Club's property contravened the express terms of the Club's easement and, if so, whether Scheife committed trespass on Grygiel's property by that act. We conclude that Scheife contravened the express terms of the Club's easement by entering Grygiel's property without consent and in doing so, he unlawfully trespassed on Grygiel's land. Accordingly, we reverse the decision of the court of appeals and remand to the circuit court for entry of judgment granting Grygiel a declaration of trespass and an award of nominal damages.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court with directions.

Section 31, T9N, R18E
WASHINGTON COUNTY, WI

North ↑

465

¶ 49. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part, dissenting in part*). While defendant Scheife was representing himself, the circuit court dismissed the plaintiffs' complaint against Scheife, including the trespass cause of action. The circuit court did not dismiss Scheife's counterclaim and explicitly stated that it was not resolving Scheife's counterclaim against the plaintiffs.

¶ 50. On appeal, the court of appeals affirmed the order of the circuit court. Scheife was the winner.

¶ 51. Here, the majority interprets the easement favorably to the plaintiffs and then goes further. It decides that the plaintiffs have a good cause of action and have made a complete case for trespass. Not only that, it awards nominal damages on the trespass cause of action to the plaintiffs. The trespass complaint may not be as simple as the majority makes out.

¶ 52. In addition to consent, Scheife also asserted defenses in the present case of laches, estoppel, and waiver. Scheife has asserted facts relating to these defenses.

¶ 53. Scheife asserted that during an earlier period when plaintiff Nahorn was a member of the Club, the Club leased the 40–acre Unrein parcel, and that it was then customary for members to access the Unrein parcel after using the easement to reach the Club. Scheife queries: "Since past practice had club members routinely using the easement to gain access to the Unrein forty acres, how could the defendant be held liable for something that had been done for years, with full knowledge of the plaintiffs?"

¶ 54. In common-law trespass, entry onto land becomes privileged if made with the consent of the land's possessor. Consent may be express or implied and may be manifested by action or by inaction, or proved

466

by other existing evidence.[1] The presence of consent will negative the existence of the tort of trespass under the common-law principle that no harm is done to a willing party ("*volenti non fit injuria*").[2] Likewise, if the possessor induces the conduct of the alleged trespasser, the trespasser may have a defense.[3] Therefore, if the possessor's conduct manifests a willingness that the defendant engage in certain conduct and the defendant acts accordingly, this manifestation destroys the wrongfulness of the conduct as between the parties; the possessor has no claim for trespass.[4]

¶ 55. Scheife's assertions of his defenses were not addressed by the circuit court or court of appeals, and they are not addressed by this court. It certainly appears that there is support in the law for Scheife's asserted defenses to trespass, namely laches, estoppel, waiver, and implied consent. If Scheife can prove his defenses in the circuit court he may win on the trespass claim.

¶ 56. Additionally, the majority opinion references a "stipulation" regarding nominal damages. At ¶¶ 8, 47, the majority states that "Grygiel stipulated to limit her damages to an award of nominal damages . . . ." The stipulation filed by the plaintiffs states only that the plaintiffs unilaterally "stipulate[d]" that they would withdraw their request for actual and punitive damages "in exchange for the entry of an award of nominal damages on the declaration of a trespass." *See* majority op., ¶ 10 n.7. Neither Scheife

---

[1] Restatement (Second) of Torts § 167 cmt. a (1965).

[2] W. Page Keeton et al., *Prosser and Keeton on Torts,* § 18, at 112 (5th ed. 1984).

[3] Restatement (Second) of Torts § 164 cmt. b (1965).

[4] Keeton, *supra* note 2, § 17 at 113.

nor the club entered this stipulation. At the summary judgment hearing, Scheife argued that "I owe no damages" and requested that the court's ruling treat him separately from any ruling against the Club.

¶ 57.  I conclude that on the basis of the record before the court, the majority cannot rely on the "stipulation" (to which the majority refers) as binding on Scheife regarding nominal damages.

¶ 58.  I would remand the issues of the trespass, damages, and the counterclaim to the circuit court. This court cannot grant summary judgment because there is an unresolved dispute of material fact regarding the defenses and the counterclaim.

¶ 59.  In my view, the majority's ruling raises questions of access to justice. The plaintiff sued the defendants for trespass. Scheife was brought to court against his will. Representing himself in the latter stages of this litigation, he has offered what appear to be viable defenses. The majority neither deals with those defenses in the decision rendered today nor gives Scheife the opportunity to develop them before the circuit court, which has never ruled on them. Scheife's defenses are simply ignored and disappear. Because the court now enters judgment against Scheife on trespass and does so without addressing and resolving these defenses, he not only loses but is denied the opportunity to make his case. Scheife has spent his money, time, and energy to appear in court in response to the plaintiffs' claims. Surely he is entitled to his own day in court and the opportunity for his position to be fairly heard, especially when the case is being remanded and requires disposition of his counterclaim.

¶ 60.  For the reasons stated, I write separately.