COURT OF APPEALS
DECISION
DATED AND FILED

**July 29, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1239**

Cir. Ct. No. **2017CV1354**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

ROBERT D. COREY, SR. AND CHERYL C. COREY,

    PLAINTIFFS-RESPONDENTS,

ROBERT D. COREY, JR., KEITH A. COREY, DAN M. COREY, CRAIG J. KODE AND THERESA A. KODE,

    PLAINTIFFS,

  V.

NORBERT T. ROFFERS AND CAROL A. ROFFERS,

    DEFENDANTS-APPELLANTS.

---

        APPEAL from an order of the circuit court for Racine County: EUGENE A. GASIORKIEWICZ, Judge. *Modified and, as modified, affirmed*.

        Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Norbert T. and Carol A. Roffers (the Rofferses) appeal from an order of the circuit court granting the Coreys[1] declaratory judgment. The Rofferses claim a forty-foot wide ingress/egress easement on land owned by the Coreys. The circuit court, pursuant to the written easement agreement documents, declared the easement to be the twelve-foot wide gravel driveway that existed at the time the Rofferses purchased their property and also declared a dispute resolution procedure for future disagreements between the parties. We affirm the court's decision, although we modify the order governing dispute resolution.

*Facts*

¶2 Three written documents affect the easement at issue: a Certified Survey Map 2239 (CSM 2239), which created three residentially zoned lots (attached to the end of this decision); a Driveway Maintenance Agreement; and a Driveway Easement Agreement. CSM 2239 created Lots 1, 2, and 3 and also provided access onto Highway K for all three lots as only one access point onto Highway K was permitted. The east twelve feet of the twenty-four-foot driveway access was to serve as access to Lot 1, and the west twelve feet was to be shared by Lots 2 and 3 as their access onto Highway K. Lot 2 is owned by the Coreys, and Lot 3 is owned by the Rofferses. CSM 2239 reflects a "40' WIDE INGRESS/EGRESS EASEMENT" across the northern boundary of Lot 2, as Lot 3

---

[1] The plaintiffs, Robert D. Corey, Sr. and Cheryl C. Corey, are husband and wife and have a joint life tenancy in the real estate. Robert D. Corey, Jr., Keith A. Corey, Dan M. Corey, Craig J. Kode, and Theresa A. Kode have a joint remainder interest in the real estate. We will refer to all the plaintiffs in this case as "the Coreys."

would be landlocked without an easement granting access across Lot 2. CSM 2239 was recorded on May 1, 2000.

¶3 The Driveway Maintenance Agreement, recorded on May 9, 2000, describes the cost-sharing for the twenty-four-foot driveway access for all three lots onto Highway K as well as the cost-sharing for Lots 2 and 3 for the driveway that serves those lots. Lots 2 and 3 "shall share in the cost of improving, maintaining, snow removal, etc. of that part of the driveway fronting on said Lot 2, necessary to afford access for the owner of said Lot 2" and Lot 3 is obligated to "bear the cost of improving, maintaining, snow removal, etc. of that remaining part fronting on Lot 2 and on Lot 3, to afford access to his premises."

¶4 The Driveway Easement Agreement was recorded on April 16, 2003, shortly before the Rofferses purchased Lot 3. The Coreys, as owners of Lot 2, expressly granted a "driveway easement" to Lot 3. The easement agreement explained that "the parties desire to confirm the grant of easement for *driveway purposes* by execution of this Agreement." (Emphasis added.) The Driveway Easement Agreement acknowledged the existence of the forty-foot wide ingress/egress easement reflected in CSM 2239, but it restricted the easement to "*existing driveways for driveway purposes* situated thereon." (Emphasis added.) The easement agreement defines "[d]riveway purposes" as "residential driveway for ingress and egress and includes use by the owners of Lots 2 and 3 and the occupants of any residence situated on the lots and their respective invitees and agents."

¶5    The Coreys commenced this declaratory judgment action[2] and the Rofferses counterclaimed, both asking the circuit court to declare each party's rights under the easement. The Rofferses and Coreys have failed as neighbors,[3] and while their interactions were testified to, we need not address them as we interpret the easement agreements and not their behaviors. The Rofferses assert the right to use/maintain the entire forty-foot wide ingress/egress area referenced in CSM 2239, whereas the Coreys claim the easement is the twelve-foot wide gravel driveway that existed when the easement was granted via the Driveway Easement Agreement.

¶6    Following a one-day trial, the circuit court held that the easement granted the Rofferses the right to use "the existing 12-foot wide gravel driveway for vehicular ingress and egress purposes and they cannot drive over any other part of the 40-foot wide ingress/egress easement." The court expressly held that the Rofferses do not have the right to use or perform maintenance anywhere on the Coreys' property outside of the twelve-foot wide driveway easement. The court also declared that "[a]ny vegetation vertically overhanging the 12-foot wide gravel driveway up to a height equivalent to the height of a semi-truck may impede vehicular traffic and must be removed." The court further modified the Driveway

---

[2] The Coreys also filed claims for trespass and nuisance. The circuit court dismissed those causes of action, and that order of dismissal is not raised on appeal.

[3] The Rofferses and the Coreys do not like each other. The circuit court described them as "unneighborly": "[B]oth parties have acted with incredible immaturity and without basic human consideration for their neighbors" and "[i]t is my sincere desire that the two parties actually communicate with one another regarding future events in this matter."

Maintenance Agreement to include a dispute resolution procedure to be utilized going forward.[4]

¶7      The Rofferses claim the court erred in finding their easement to be the twelve-foot wide gravel driveway rather than the forty-foot wide ingress/egress area and in preventing them from maintaining the "area immediately adjacent to the easement." We affirm the circuit court's declaration that the easement is the existing twelve-foot wide gravel driveway that existed at the time the Rofferses purchased Lot 3 and that an easement owner does not have the right to maintain land outside of the easement granted.

*Standard of Review*

¶8      The construction of an easement is a question of law that we review de novo while benefitting from the analysis of the circuit court. *Garza v. American Transmission Co. LLC*, 2017 WI 35, ¶19, 374 Wis. 2d 555, 893 N.W.2d 1; *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶12, 328 Wis. 2d 436, 787 N.W.2d 6. "[W]e look to the deed of easement … to determine what right to use the dominant estate holder has." *Garza*, 374 Wis. 2d 555, ¶24. The circuit court's findings of fact will not be set aside unless clearly erroneous, and all inferences will

---

[4] The circuit court's Findings of Fact and Conclusions of Law indicated that it was modifying the Driveway Maintenance Agreement to include the following paragraph:

> When repairs are necessary or, one party believes repairs are necessary, and he cannot get the agreement of the other party, 2 versus 3 or 3 versus 2, then the parties shall submit proposals, either a proposal to modify or a proposal not to modify, for binding arbitration by an arbitrator and that they will equally share the cost of the arbitrator, and the arbitrator's decision will be binding on the parties relative to what maintenance ought or not to be done, and the cost and cost sharing of that maintenance. If the parties cannot agree on an arbitrator, one party may submit to the Court the request for the appointment of an arbitrator, the Court will appoint the arbitrator to decide the issue.

be drawn in favor of the circuit court's ruling. *Mentzel v. City of Oshkosh*, 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988). If the language of the deed of easement is unambiguous, we look no further than the deed of easement itself. *Garza*, 374 Wis. 2d 555, ¶25.

*Law of Easements*

¶9      "An easement grants a right to use another's land." *Id.*, ¶23. An easement creates two estates: "the dominant estate enjoys the ability to use the land in the way described in the easement, while the servient estate permits that use." *Id.* The Rofferses hold the dominant estate, while the Coreys are obligated to permit the Rofferses to use their property "in the way described in the easement." *Id.* "The dominant estate holder's 'use of the easement must be in accordance with and confined to the terms and purposes of the grant.'" *Id.* (citation omitted). "Any use not in accordance with the specific right to use granted in the easement is outside the easement's scope and thus prohibited." *Id.*

¶10      We find no ambiguity in the easement documents. CSM 2239 did not expressly grant a forty-footwide easement to Lot 3; CSM 2239 reserved a forty-foot corridor along the north lot line of Lot 2 for "ingress/egress" to Lot 3. The Driveway Maintenance Agreement expressly referred to the twenty-four-foot wide driveway coming off of Highway K, and CSM 2239 makes clear that twelve feet of the twenty-four-foot wide driveway would serve Lot 1 on the east and twelve feet of the driveway would serve as the access to Lot 2 and Lot 3 on the west. The Driveway Maintenance Agreement referenced the cost sharing of the "driveway fronting on said Lot 2, necessary to afford access for the owner of said Lot 2" and "that remaining part fronting on Lot 2 and on Lot 3, to afford access to his premises

for the owner of said Lot 3," giving credence to the fact that the existing driveway continued on as a twelve-foot driveway across Lot 2.

¶11 The Driveway Easement Agreement expressly acknowledged the reservation of the forty-foot wide ingress/egress easement reflected in CSM 2239 but explained that "the parties desire to confirm the grant of easement for driveway purposes by execution of this Agreement" and restricted the easement to "*existing driveways for driveway purposes.*" (Emphasis added.) At the time the Rofferses purchased Lot 3, the easement was for the "existing" driveway, which as the court found was twelve-feet in width and corresponds to the twelve-foot wide driveway access from Highway K to be shared by Lots 2 and 3. The Rofferses have not contested the court's factual finding that the existing gravel driveway is twelve-feet wide. The Rofferses have the right to the full use of the twelve-foot driveway for driveway purposes, which is expressly defined in the Driveway Easement Agreement as a "residential driveway for ingress and egress and includes use by the owners of Lots 2 and 3 and the occupants of any residence situated on the lots and their respective invitees and agents." The court did not err in declaring that the Rofferses' attempt to use or maintain the driveway easement outside of the twelve-foot width of the existing driveway was prohibited as any use outside of a granted easement is prohibited. *See Garza*, 374 Wis. 2d 555, ¶23.

¶12 Given the Rofferses' and the Coreys' ongoing disputes with one another, the circuit court also declared a dispute resolution process going forward. We do not see the dispute resolution process as necessary given the established law of easements. The Rofferses have the absolute right to trim/remove vegetation that encroaches within their twelve-foot wide driveway easement and do not need approval from the Coreys to do so as long as they stay within the aforementioned twelve-foot space. Implied in every easement is "the right of the dominant estate to

7

do what is reasonably necessary to enjoy the easement" so long as the dominant estate does not "cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment." *Id.*, ¶¶29, 31 (citation omitted). We modify the court's dispute resolution procedure to make clear that the owners of Lot 3 (the Rofferses) are not obligated to seek permission from the owners of Lot 2 (the Coreys) to remove impediments within the twelve-foot easement area pursuant to the Driveway Maintenance Agreement or make reasonable use of the twelve-foot driveway easement unless the owners of Lot 3 seek contribution from the owners of Lot 2 for the cost of maintaining the easement area. In that instance, the circuit court's order relating to dispute resolution shall be adhered to.

*Conclusion*

¶13    The Driveway Easement Agreement expressly grants the owners of Lot 3 an easement to use the existing gravel driveway on Lot 2, which the court found to be twelve-feet wide. The Rofferses have the right to trim and remove vegetation that invades the twelve-foot area of the easement, including the vertical space, but the Rofferses may not exceed that twelve-foot area. The circuit court's dispute resolution procedure is modified as discussed above.

*By the Court.*—Order modified and, as modified, affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

8

DOCUMENT #
1725832

FILED
03-11-2019
Clerk of Circuit Court
Racine County
2017CV001354

REGISTER'S OFFICE
RACINE COUNTY, WI

RECORDED

2000 MAY -1  AM 8:51

MARK A. LADD
REGISTER OF DEEDS

VOLUME 6
PAGE 887

## RACINE COUNTY CERTIFIED SURVEY MAP NO. MAP 2239

BEING A DIVISION OF CERTIFIED SURVEY MAP NO. 1405, RECORDED IN VOLUME 4 PAGE 369 OF RACINE COUNTY CERTIFIED SURVEY MAPS, BEING LOCATED IN THE NORTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 31, TOWN OF NORWAY, RACINE COUNTY, WISCONSIN.



SUBDIVIDER:
JEFFREY P. SCHOLEY
COUNTRY VIEW HOMES
8277 POINT DRIVE
WIND LAKE, WI. 53185

VICINITY MAP
NE 1/4 SEC. 31-4-20
SCALE: 1" = 2000'

FROM:
010-04-20-31-002-010

LOT 1
010-04-20-31-002-020

LOT 2
010-04-20-31-002-030

LOT 3
010-04-20-31-002-040

BEARINGS BASED ON WISCONSIN STATE
PLANE COORDINATE SYSTEM, SOUTH ZONE

0     120     240

SCALE: 1" = 120'

LEGEND
○ = SET 1" IRON PIPE, 24" IN LENGTH, 1.13 LBS./LIN. FT.
◉ = FOUND RACINE COUNTY MONUMENT
● = FOUND IRON PIPE
( ) = RECORDED AS

NOTES: TOPOGRAPHY SCALED FROM
TOPOGRAPHIC MAP PREPARED FOR RACINE COUNTY
PLANNING COMMITTEE BY ALSTER ASSOCIATES, INC.
PROPERTY IS ZONED A-2.
ONLY ONE ACCESS POINT IS PERMITTED TO C.T.H. "K".
A 24' WIDE PRIVATE DRIVEWAY IS TO ACCESS THE ABOVE LOTS
THE EAST HALF (12') TO SERVE LOT 1 AND THE WEST HALF
(12') TO SERVE LOTS 2 AND 3.

DEGEN-FOAT SURVEYING ASSOCIATES
100 SOUTH SECOND STREET
WATERFORD, WISCONSIN
(262)534-5404     (FAX)534-2012
004074\004074C1.DWG
THIS INSTRUMENT DRAFTED BY: GARY B. FOAT

SHEET 1 OF 2 SHEETS

WISCONSIN
GARY B.
FOAT
S-1598
Waterford,
Wis.
LAND SURVEYOR

MARCH 21, 2000
REVISED: APRIL 2, 2000

EXHIBIT
5

13-1