COURT OF APPEALS
DECISION
DATED AND FILED

**January 13, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2177**

Cir. Ct. No. **2022CV08**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

CONOR CASEY, BERET CASEY, MARK EGGLESON, SHARI EGGLESON, BERTRAM KASISKE, JANE KASISKE, MONNA SUERTH, AS TRUSTEE OF SUERTH FAMILY TRUST DATED 6-3-1997 AND BRENDAN WALL, AS TRUSTEE OF WALL FAMILY CABIN TRUST,

   PLAINTIFFS-RESPONDENTS,

 V.

TOWN OF BAYVIEW, WISCONSIN,

   DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Bayfield County: ANTHONY J. STELLA, JR., Judge. *Affirmed in part, reversed in part, and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  The Town of Bayview appeals from an order determining the Town's and several landowners' rights under three easements, the issuance of a permanent injunction against the Town, and the dismissal of the Town's counterclaim with prejudice.  The Town argues that the circuit court erred by: (1) denying the Town's motion to join all necessary parties pursuant to WIS. STAT. § 803.03(1) (2023-24);[1] (2) denying the Town's motion for leave to file a third-party complaint pursuant to WIS. STAT. § 803.05(1); (3) granting summary judgment in favor of the landowners and dismissing the Town's counterclaim for declaratory judgment; and (4) issuing a permanent injunction against the Town.

¶2    We affirm the circuit court's decisions relating to the motion to join necessary parties, the motion for leave to file a third-party complaint, and the permanent injunction.  For the reasons that follow, however, we reverse the circuit court's grant of summary judgment regarding the landowners' rights under two of the three easements.  We also remand the case to the circuit court with directions to enter an amended order consistent with this opinion.

## BACKGROUND

¶3    In 1971, a plat recorded with the Bayfield County Register of Deeds created the Grant's Houghton Point Subdivision.  The subdivision contains 24 adjoining contiguous lots running from north to south, with each lot having frontage on Lake Superior.  Conor and Beret Casey own lots 5, 6, and the northern half of lot 7; Mark and Shari Eggleson own lots 11, 12 and 13; Bertram and Jane Kasiske own lot 14 and the northern part of lot 15; the Suerth Family Trust owns

---

[1]  All references to the Wisconsin Statutes are to the 2023-24 version.

lots 23 and 24; and the Wall Family Cabin Trust owns lot 22 and the southern part of lot 21 (collectively, "the Landowners"). The Town also owns portions of lots 15 and 16,[2] as well as lots 17, 18 and 19. The map on the following page is helpful for visualizing the lots with respect to the three easements at issue in this case, which we describe below.

¶4　　The plat created a 40-foot-wide easement ("the Platted Easement") that runs continuously from north to south along the western border of the subdivision. The easement is labeled as "40' ACCESS EASEMENT" on the plat. The easement also runs through a ravine located within lots 16 and 17. The plat further contained the following note:

> RESTRICTIONS
>
> CONVEYANCES AFFECTING LOTS IN THE PLAT ARE SUBJECT TO THE FOLLOWING:
>
> ….
>
> Each conveyance must provide easement of 40 foot right-of-way to assure ingress and egress for all lots.

(Formatting altered.)

---

[2] Lots 15 and 16 were further subdivided into four lots in 1992, two of which were conveyed to the Town by special warranty deed.



¶5      A former railroad right-of-way for the Chicago and Northwestern Railroad also runs along both the western border of the subdivision and the Platted Easement.  In 1992, a "Mutual Access Easement" was recorded with the register of deeds ("the 1992 Easement").  The 1992 Easement created "a perpetual roadway easement for ingress and egress purposes over and across that portion of the existing roadbed of the former Chicago Northwestern Railroad right-of-way" abutting lots 15 through 20, and it "specifically benefit[ed]" those lots.

¶6      In 1995, an "Easement Agreement" was recorded with the register of deeds ("the 1995 Easement").  In that agreement, the former owners of the southern half of lot 7 and lots 8 through 16 granted and conveyed "to each other and their heirs, successors and assigns, a thirty-three (33') wide perpetual easement for access purposes over and across the abandoned railroad right-of-way with the centerline being the same as the centerline of the existing driveway as it crosses and lies over the above described real estate."

¶7      In 2010, the Town acquired its lots via a special warranty deed.  These lots are now part of the Houghton Falls Nature Preserve, which is open to the public.  The deed also conveyed easement rights to the Town under the Platted Easement, the 1992 Easement, and the 1995 Easement.  The parties do not dispute that the Town took title to its lots subject to the three easements.

¶8      The Landowners' lots are located to the north and south of the Town's lots.  As owners of lots in the subdivision, the Landowners hold easement rights under the Platted Easement.  The Egglesons, as the owners of lots 11 through 13, also hold easement rights under the 1995 Easement.  The Kasiskes, as the owners of lot 14 and the northern part of lot 15, also hold easement rights under both the 1992 and 1995 Easements.

¶9     The Town created a management plan for the nature preserve in order to, among other things, "allow appropriate public access, and provide information as to the preserve's heritage, while minimizing the impact of public use on the adjacent public landowners." The plan proposed the installation of barriers and locked gates on the northern and southern boundaries of the Town's lots, "with signage stating no access to Houghton Falls Preserve." The plan also called for fencing between private property and the nature preserve that would be "extended for a length to discourage skirting the gate."

¶10     The Town subsequently erected a 15-foot-wide metal gate with wire fencing at the northern boundary of the nature preserve on the Town's portion of lot 15. The gate and fencing completely blocked the Platted Easement, the 1992 Easement, and the 1995 Easement. The Town also erected a 15-foot-wide metal gate with wire fencing near the southern boundary of the nature preserve on lots 18 and 19. The gate and fencing completely blocked the 1992 Easement and half of the Platted Easement.

¶11     In July 2021, the Landowners served on the Town a "Notice of Circumstances Giving Rise to Claim and Claim Pursuant to WIS. STAT. § 893.80," alleging that the Town unlawfully interfered with the Landowners' rights to use the Platted Easement. In September 2021, the Town served its disallowance of the Landowners' claim. In response, in February 2022, the Landowners brought this action against the Town, seeking a declaration that: (1) the Platted Easement, the 1992 Easement, and the 1995 Easement were valid and enforceable; (2) the Town had no right to block or interfere with the Landowners' rights under the three easements; and (3) the Town unlawfully interfered with the Landowners' rights under the three easements. The Landowners also sought to enjoin the Town "from blocking, obstructing, or interfering" with their rights under the three easements

and to compel the Town "to remove any and all fencing and any and all other objects or structures that block, obstruct, or interfere" with the three easements and with the Landowners' "use and enjoyment of the same."

¶12   The Town moved to dismiss the suit on the ground that the Landowners failed to join all necessary parties pursuant to WIS. STAT. § 803.03(1). The Town argued that "complete relief regarding the meaning and effect of the easements cannot be accorded without" including in the lawsuit the other 17 landowners who also owned lots within the subdivision.  The Town further contended that the 17 additional landowners were indispensable because "there would be no mechanism for them to obtain relief regarding the easements in the future if they were not joined as parties to this lawsuit."  The circuit court denied the Town's motion to dismiss, concluding that the 17 nonparty landowners were not necessary parties.

¶13   In October 2022, following the denial of its motion to dismiss, the Town moved for leave to amend its pleadings to assert a counterclaim against the Landowners pursuant to WIS. STAT. § 802.09 and to file a third-party complaint pursuant to WIS. STAT. § 803.05.  The Town's counterclaim sought a declaration regarding the rights and limits of the Platted Easement, the 1992 Easement, and the 1995 Easement "as they may apply to each of the named parties."  The Town's third-party complaint sought a declaration against the 17 nonparty landowners regarding the rights and limits of the three easements as to those landowners and the Town.  Following a nonevidentiary hearing, the circuit court denied the Town's motion to file a third-party complaint, but it granted the Town's motion to file a counterclaim.  The Town subsequently filed its counterclaim against the Landowners.

¶14    The parties then filed cross-motions for summary judgment, with both sides seeking judgment in their favor on all of their claims.  The circuit court issued an oral ruling, concluding that all parties have the same easement rights granted by their deeds, that "those easements exist in the same scope as they were when they were granted," and that "the ingress/egress easements are in full force and effect for all the parties who have those easements."  The court further concluded that because all parties have these easements and "haven't surrendered them or lost them due to necessity or lack thereof," the Town was enjoined from blocking the easements.

¶15    The circuit court clarified its oral ruling at a subsequent hearing on the Landowners' proposed judgment and findings, which was followed by a written order with the court's findings of fact and conclusions of law.  Regarding easement rights, the court found that "[e]ach and all of the [Landowners] have easement rights under the [Platted] Easement," that the Kasiskes "have easement rights under the 1992 Easement," and that the Kasiskes and the Egglesons "have easement rights under the 1995 Easement."  As to these rights, the court concluded that "the [Landowners] together with their respective invitees each have all rights as conferred by their respective Easement or Easements to travel through and across the Town's property, to the full extent as expressly provided in the conveyances and documents that created each of said Easements."

¶16    The circuit court also concluded that the Town's placement of gates and fences within the three easements "unlawfully obstruct[ed] and interfere[d] with the [Landowners'] respective easement rights.  The Town has no right to block, obstruct, or interfere with any of the three Easements at issue."  The court further concluded that the harm and damages to the Landowners resulting from the "continuing obstruction of the easements cannot be adequately compensated with

money damages" and that the balance of the equities favored the Landowners and permanent injunctive relief.

¶17    As a result, the circuit court granted summary judgment to the Landowners, dismissed the Town's counterclaim with prejudice, and permanently enjoined the Town "from blocking, obstructing, or from interfering with, each of the [Landowners'] respective easement rights under" the three easements. The court ordered the Town to remove "any fencing, fence posts (including rolled up fencing located within any of the easements) and any other items or obstructions that it has placed within any of the easements." However, the Town was not responsible for removing "anything that it did not place within the easements, such as pre-existing railroad fencing." The court also allowed fencing near the ravine to remain in place "unless and until such time as an easement holder decides to remove it as may be necessary in order to exercise and develop his or her easement rights."

¶18    The Town now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

### I. Necessary Parties

¶19    The Town first argues that the circuit court failed to make findings regarding whether 17 nonparty landowners were necessary parties pursuant to WIS. STAT. § 803.03(1). The Town contends that these 17 nonparty landowners benefit from the easements at issue and therefore have a direct and immediate interest in the outcome of the case. Excluding those landowners, the Town continues, thereby results in an incomplete resolution. Because the 17 nonparty

landowners were not made part of the Landowners' suit and their properties are affected by the three easements, the Town asserts that those 17 landowners are not bound by the judgment in this case "and are presently able to sue the Town seeking a judgment inconsistent with the judgment herein."

¶20    Whether a person is a necessary party is a question of law that we review de novo. *Nelson v. Loessin*, 2020 WI App 72, ¶10, 394 Wis. 2d 784, 951 N.W.2d 605. A party is considered necessary for one of the reasons provided in WIS. STAT. § 803.03(1). *McNally CPA's & Consultants, S.C. v. DJ Hosts, Inc.*, 2004 WI App 221, ¶22, 277 Wis. 2d 801, 692 N.W.2d 247. First, a party is necessary if in that party's absence "complete relief cannot be accorded among those already parties." Sec. 803.03(1)(a). Second, a party is necessary if that party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may": (1) "[a]s a practical matter impair or impede the person's ability to protect that interest"; or (2) "[l]eave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his or her claimed interest." Sec. 803.03(1)(b)1.-2.

¶21    We disagree with the Town's contention that the circuit court did not address the requirements in WIS. STAT. § 803.03(1). The court considered whether complete relief could be accorded among those who were already parties when it explained that the Landowners were not asking for "a judgment declaring the easement's validity overall as to all the property owners who might claim an interest" because each landowner had different easements and different interests. *See* § 803.03(1)(a). It added that the Landowners were "simply seeking to enforce their own individual rights by asking the Court to enjoin an interference with their

own easement rights" and that granting this relief would not "necessarily impair anybody else's rights." *See* § 803.03(1)(b)1.

¶22 Further, the circuit court considered whether the Town would be subject to inconsistent obligations, stating that it did not believe that if it

> ruled that certain people have certain easement rights and then another case came up and there was a different ruling, then the [T]own's obligation to those people would be different. They wouldn't be in a situation where they have an impossible task of complying with one court order and violating another. They would just have different obligations regarding the different property owners based on their different rights, whether it's abandonment or having a different easement.

*See* WIS. STAT. § 803.03(1)(b)2. The court also stated that joining the 17 nonparty landowners placed the burden on the Landowners "to upset neighbors … who haven't, frankly, asserted any rights or shown any interest in [the case], at least up until now."

¶23 We agree with the circuit court and conclude that the 17 nonparty landowners were not necessary parties under the requirements set forth in WIS. STAT. § 803.03(1). First, complete relief can be accorded between the Landowners and the Town—i.e., "those already parties"—without joining the 17 other landowners. *See* § 803.03(1)(a). Here, the Landowners sought a declaration regarding their rights under the three easements and an order enjoining the Town from placing barriers and fences within those easements. If the Landowners were successful, the court could declare their rights regarding the three easements and issue the injunction. If not, then the court would deny the injunction and the Town's barriers and fences would remain.

¶24 That the 17 nonparty landowners also benefit from the three easements does not mean complete relief to the Landowners and the Town cannot be accorded, given that the Landowners seek a declaration regarding *their* easement rights and not the rights of every property owner in the subdivision. Any relief granted to the Landowners or the Town in this instance would not directly affect the 17 nonparty landowners.

¶25 Second, and importantly, the 17 nonparty landowners have not "claim[ed] an interest relating to the subject of the action." *See* WIS. STAT. § 803.03(1)(b). The inquiry as to whether a party has an "interest" is "not whether a prospective party has a legal or legally protected interest in the subject of an action, but whether the person or entity 'has an interest of such direct and immediate character that the [prospective party] will either gain or lose by the direct operation of the judgment.'" *Dairyland Greyhound Park, Inc. v. McCallum*, 2002 WI App 259, ¶15, 258 Wis. 2d 210, 655 N.W.2d 474 (alteration in original; citation omitted).

¶26 The Town does not argue that the 17 nonparty landowners claimed to have an interest in the subject of the action between the Town and the Landowners. As noted by the Landowners, the Town does not show that the 17 nonparty landowners "engaged in any negotiations with the Town, hired counsel, sent any demand letters to the Town, or had threatened to file a lawsuit against the Town because the Town erected the fencing at issue in this case." That the 17 nonparty landowners benefit from the easements at issue, as the Town contends, is an insufficient interest to require that they be joined as a party because having a claim that could potentially be brought against the Town—simply by having easement rights under the same three easements at issue in this case—is not the

same as claiming an interest related to the subject of the Landowners' suit. *See Nelson*, 394 Wis. 2d 784, ¶18.

¶27　Furthermore, the 17 nonparty landowners do not have an interest of such direct and immediate character that they would either gain or lose by the direct operation of the judgment in the Landowners' suit. As noted above, the Landowners seek a determination regarding the Town's interference with their easement rights, not the easement rights of those 17 other landowners. A determination of the Landowners' rights in the absence of the 17 nonparty landowners would not alter the easement rights of the 17 landowners, and they would not gain or lose any property rights by operation of the judgment determining the Landowners' rights. Thus, those 17 nonparty landowners would not be (and are not) bound by the judgment in this case, and they may seek a judgment regarding their own easement rights.

¶28　Because the Town cannot show that the 17 nonparty landowners "claim[ed] an interest relating to the subject of the action," we need not address additional matters argued by the Town. These issues include whether those landowners are "so situated that the disposition of the action" in their absence may either "impair or impede" the 17 nonparty landowners' ability to protect their interests or leave those already parties "subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of" the absent party's claimed interest. *See* WIS. STAT. § 803.03(1)(b)1.-2.

## II. The Town's Motion for Leave to File a Third-Party Complaint

¶29　The Town next argues that the circuit court erred by denying the Town's motion for leave to file a third-party complaint. The Town contends that the court applied an incorrect statute in making this determination, asserting that

the court should have applied WIS. STAT. § 802.09 rather than WIS. STAT. § 803.05. The interpretation and application of a statute—including which statute applies to a particular context—are questions of law that we review independently. *See Nelson*, 394 Wis. 2d 784, ¶¶7, 10.

¶30 WISCONSIN STAT. § 803.05(1) specifically addresses filing a third-party complaint and when a party requires leave to do so. It provides that "[a]t any time after commencement of the action, a defending party, as a 3rd-party plaintiff," may serve a complaint on a person who is not a party to the action "who is or may be liable to the defending party for all or part of the plaintiff's claim against the defending party, or who is a necessary party" under WIS. STAT. § 803.03. Sec. 803.05(1). The third-party plaintiff must obtain leave to file its third-party complaint if it seeks to do so six months after the filing of the summons and complaint. *Id.*

¶31 WISCONSIN STAT. § 802.09(1), on the other hand, allows a party to amend its pleadings "once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order." "Otherwise a party may amend a pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires." *Id.* Given that WIS. STAT. § 803.05 specifically addresses leave to file a third-party complaint—much more so than § 802.09, which addresses leave to amend pleadings more generally—the circuit court did not apply the incorrect statute. *See State v. Larson*, 2003 WI App 235, ¶6, 268 Wis. 2d 162, 672 N.W.2d 322 ("Where two statutes relate to the same subject matter, the specific statute controls the general statute.").

¶32 The Town does not meet either requirement under WIS. STAT. § 803.05(1). As noted above, the Landowners sued the Town for a determination of their rights regarding the three easements and for an injunction to prevent the Town from interfering with the Landowners' rights. As the Landowners argue, the 17 nonparty landowners "whom the Town wished to implead could" not be liable to the Town for those claims. Given our determination that the 17 nonparty landowners are not necessary parties, the other requirement for impleading those landowners is also not met. Therefore, the circuit court did not err by denying the Town's motion for leave to file a third-party complaint.

### III. The Circuit Court's Summary Judgment Decision

¶33 The Town next challenges the circuit court's interpretation of the three easements and its dismissal of the Town's counterclaim in the court's summary judgment decision. We review a circuit court's summary judgment decision de novo, applying the same methodology as the circuit court. *AKG Real Estate, LLC v. Kosterman*, 2006 WI 106, ¶14, 296 Wis. 2d 1, 717 N.W.2d 835. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶34 The circuit court's summary judgment decision involved the interpretation of documents creating easements, which is also a question of law we review de novo. *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶12, 328 Wis. 2d 436, 787 N.W.2d 6. When interpreting the instrument creating an easement, we seek to ascertain the parties' intent. *Konneker v. Romano*, 2010 WI 65, ¶26, 326 Wis. 2d 268, 785 N.W.2d 432. "The primary source of the parties'

intent is what is written within the four corners" of the instrument. *Id.* If the language within those four corners is unambiguous, we need not look further to extrinsic evidence. *Grygiel*, 328 Wis. 2d 436, ¶20. If, however, the language granting the easement is ambiguous, meaning it is susceptible to more than one reasonable interpretation, we may resort to extrinsic evidence to determine the parties' intent. *Id.*

¶35 "An easement is an interest in land possessed by another." *Gojmerac v. Mahn*, 2002 WI App 22, ¶18, 250 Wis. 2d 1, 640 N.W.2d 178 (2001). Easements are classified into appurtenant easements and easements in gross. *Id.* The easements at issue in this case are appurtenant easements, meaning that the easement rights or obligations "are tied to ownership or occupancy of a particular unit or parcel of land." *Id.* Appurtenant easements create two distinct property interests—the dominant estate and the servient estate. *Id.*, ¶19. The dominant estate "enjoys the privileges as to other land granted by an easement," while the servient estate "permits the exercise of those privileges." *AKG Real Estate*, 296 Wis. 2d 1, ¶3.

¶36 For purposes of this case, the Landowners' properties are the dominant estates, and the Town's property is the servient estate. Appurtenant easements exist "for the benefit of the dominant estate alone" and "can be used only in connection with the dominant estate to which" they are appurtenant. *Gojmerac*, 250 Wis. 2d 1, ¶22. In other words, an appurtenant easement "cannot be used as a mode of access to another lot to which it is not appurtenant, even though there is no resulting additional burden." *Grygiel*, 328 Wis. 2d 436, ¶15 (citation omitted). In addition, a "servient estate may not unreasonably interfere with the dominant estate's right to use the easement," but the easement's use

"must be in accordance with and confined to the terms and purposes of the grant." ***Konneker***, 326 Wis. 2d 268, ¶25 (citation omitted).

¶37     The Town argues that, based on the plain language of the Platted Easement, the 1992 Easement, and the 1995 Easement, the purpose of each easement "was to ensure lot access to each lot owner" and that nothing in the easements' language "suggests that the purpose was to allow continuous travel from north to south." Based on this language, the Town asserts that none of the easements give the Landowners the right to cross the Town's property. In a related and central contention, the Town argues that the circuit court's ruling "would allow each of the Plaintiff Landowners to invite others to use the easements, but this would be an unlawful enlargement of each easement, contrary to applicable law."

¶38     In response, the Landowners contend that the three easements "give the respective Landowners, as dominant estate holders, the right to travel and pass through the servient estates, including the Town's property." Because the easements are "right-of-way" easements, the Landowners assert that they have "the unrestricted right to pass through the servient properties along the path of their respective easements." The Landowners thus argue that the Town "misreads the easements as not allowing any use of the easements for any purpose other than what is absolutely necessary to reach their respective properties." Such a limitation on the Landowners' exercise of their easement rights, the Landowners continue, does not appear anywhere in the easement instruments.

¶39     We agree, in part, with both the Landowners and the Town. As explained below, the Platted Easement gives all the Landowners the right to cross the Town's property and each other's property along that easement. With the

17

exception of the Kasiskes and the Egglesons, what the Landowners may not do is use the 1992 and 1995 Easements to cross the Town's property along those easements. The Kasiskes and the Egglesons may grant the other Landowners the right to use those easements within the Kasiskes' and the Egglesons' own property, but not within the Town's property. The circuit court erred by concluding that all the Landowners could use the 1992 and 1995 Easements to cross the Town's property.

### A. *The Platted Easement*

¶40 The plat creating the Platted Easement includes restrictions to which the lots are subject, one of which states that each conveyance "must provide easement of 40 foot right-of-way to assure ingress and egress for all lots." In its plain language, the Platted Easement's purpose was to "assure ingress and egress for all lots." "Ingress" means "[t]he act of entering"; "[t]he right or ability to enter; access." *Ingress*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Egress," on the other hand, means "[t]he act of going out or leaving"; "[t]he right or ability to leave; a way of exit." *Egress*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, the purpose of the Platted Easement was to assure there was a way to enter and exit each lot along the easement.

¶41 The Platted easement is an express easement, not, as the Town contends, an easement by necessity. *See **AKG Real Estate***, 296 Wis. 2d 1, ¶15 (defining "express easement" as an easement by written grant or reservation); ***Grygiel***, 328 Wis. 2d 436, ¶28 n.9 (defining an "easement of necessity" as one that does not contain express terms, but rather "may be granted when an easement 'is required for the complete and beneficial use of the land'" (citation omitted)). There is no language in the plat stating that ingress and egress must be only from

18

each owner's respective lot to the nearest public road. Nor is there language limiting the manner in which a lot owner may enter or exit each lot along the Platted Easement. For example, the plat does not limit the Platted Easement's use only to vehicular travel for entry and exit to each lot. Furthermore, there is no language prohibiting certain activities, such as hiking, within the Platted Easement as a way of ingress and egress to each lot. Thus, the plain language creating the Platted Easement does not limit its use only to what is necessary to reach each lot, as the Town contends.

¶42 In addition, the Platted Easement runs continuously from north to south and connects each lot in the subdivision. Nothing in the plat language limits travel within the easement to one direction or prohibits travel through the lots within the subdivision. Thus, each Landowner is allowed to use the easement to cross other properties along the Platted Easement, including the Town's property, to reach his or her respective lot. Such use is in connection with the ownership of each Landowner's property. The Landowners may not, however, travel to properties to which they do not have access via the Platted Easement. The cases the Town cites in support of its reading of the Platted Easement are therefore distinguishable. *See Grygiel*, 328 Wis. 2d 436, ¶¶33-34 (concluding that a club member violated an easement's express terms by using the easement to access property other than the club's property—i.e., using the easement "for the benefit of property other than the dominant estate"); *Sicchio v. Alvey*, 10 Wis. 2d 528, 536-37, 103 N.W.2d 544 (1960) (concluding that the plaintiff owners of the northern half of a lot did not acquire an implied easement granting them a right to use an easement in the southern half of the lot owned by the defendant because granting "a right to pass upon a private way to one lot does not confer the right to pass further upon the same way to another lot" (citation omitted)).

19

¶43    Finally, the Landowners' right to use the Platted Easement is not defeated simply because they may have another way of accessing their lots, as the Town argues.  The Platted Easement is an express easement that "cannot be defeated by showing that the owners have another convenient and accessible way of going to and from their premises."  *See AKG Real Estate*, 296 Wis. 2d 1, ¶28 (emphasis omitted; citation omitted).  In short, the Landowners—together with their respective invitees—may use the Platted Easement to cross the Town's property to access and exit their properties.

### B. The 1992 Easement and the 1995 Easement

¶44    The Town also argues that the only Landowners who benefit from the 1992 and 1995 Easements are the Kasiskes and the Egglesons and that they cannot grant all of the Landowners a right to use those easements to cross the Town's property.  In response, the Landowners claim that the 1992 and 1995 Easements "were intended to allow travel past or across the ravine along the abandoned railroad right-of-way."  They argue that all three easements give them "the right to travel and pass through all of the servient properties, including the Town's property, so long as such travel is done in connection with their ownership of their respective (dominant) property *within the Subdivision*."   (Emphasis added.)  The Landowners do not point to any particular language in the 1992 and 1995 Easements in support of these arguments, but rather seem to suggest that the fact of the Landowners all being located in the same subdivision is what matters for purposes of construing the scope of the easement grants in the two easements.

¶45    On this issue, we agree with the Town.  Contrary to the Landowners' arguments, there is no language in either the 1992 or 1995 Easements allowing *all* of them—not just the Kasiskes and the Egglesons—to cross the Town's property

in order to access their own property.[3] And the mere fact that the easements run directly through or past the ravine is not sufficient to establish a right for all landowners to use those easements for a north-and-south connection along the ravine by going through the Town's properties. Rather, under Wisconsin law, dominant estates may not be so enlarged. *Gojmerac*, 250 Wis. 2d 1, ¶23. As our supreme court has explained, an easement cannot be enlarged to extend to a nondominant estate for which the easement was not originally intended, unless the easement terms expressly provide for such use. *See Grygiel*, 328 Wis. 2d 436, ¶¶17-18; *see also Gojmerac*, 250 Wis. 2d 1, ¶22.

¶46 For example, in *Grygiel*, a club had an easement over the plaintiff's property "for the purpose of ingress and egress as a means of access" to the club's property. *Grygiel*, 328 Wis. 2d 436, ¶1. The club allowed its members to use its property for hunting, and it allowed club members to bring family members, invitees, and persons interested in joining the club onto the club's property.

---

[3] We ordered supplemental briefing on the issue of whether the Kasiskes and the Egglesons could allow their invitees to use the 1992 and 1995 Easements to cross the Town's property. In response, and consistent with their argument that we address in this section of the opinion, the Landowners argued that there is no restrictive language in the 1992 and 1995 Easements prohibiting the Kasiskes and the Egglesons from allowing their invitees to use those easements. However, and respectably, the Landowners also conceded that any invitee's use of the 1992 and 1995 Easements would be limited to a use in connection with the dominant estate. *See Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶15, 328 Wis. 2d 436, 787 N.W.2d 6. They noted that the case law suggests that other Landowners—indeed, all other persons—could use the 1992 and 1995 Easements to visit the Kasiskes and the Egglesons on their property upon an invitation from either of those two property owners. *See id.*, ¶19 ("A written easement holder has the right to use the easement in accordance with the express terms of the easement grant."); *Hunter v. Keys*, 229 Wis. 2d 710, 716, 600 N.W.2d 269 (Ct. App. 1999) (stating that an easement holder "possesses all rights necessary to the reasonable and proper enjoyment of the easement"). But the Landowners conceded that, as invitees, the other Landowners could not use the 1992 and 1995 Easements "solely in connection with their use of their own properties." In other words, the other Landowners cannot use the 1992 and 1995 Easements to get to and from their own properties at any and all times.

*Id.*, ¶3.   The plaintiff did not dispute that the easement allowed the club's members and its invitees to use the easement to access the club's property. *Id.*, ¶4. A club member and his nonmember invitees, however, used the easement to cross both the plaintiff's and the club's property to access and hunt on non-club property. *Id.*, ¶¶5-6.   The club member rented a home on the non-club property, which gave him hunting privileges on that property. *Id.*, ¶5.

¶47   Focusing on the language of the easement's grant to determine whether certain conduct contravened the terms of an express easement, our supreme court concluded that the club member and his invitees' use of the easement for the benefit of a nondominant estate—i.e., the non-club property— "effectively enlarged the dominant estate to include the [non-club property] contrary to established easement law." *Id.*, ¶¶32-33.   The court explained that allowing the club, its members, and its invitees to use the easement to access property other than the club's property would enlarge and extend the easement to a property for which it was not originally intended. *See id.*, ¶38.   Thus, the court held that the club member and his invitees' "use of the easement to access property other than the [c]lub's contravened the express terms of the [c]lub's easement." *Id.*, ¶39.

¶48   Here, the language creating the 1992 Easement stated it was "a perpetual roadway easement for ingress and egress purposes over and across that portion of the existing roadbed of the former Chicago Northwestern Railroad right-of-way" abutting lots 15 through 20, and that it would "*specifically benefit the abutting parcels.*"   (Emphasis added.)   Just as with the Platted Easement, the purpose of the 1992 Easement is for entry and exit to and from lots 15 through 20 along the easement.   As we concluded for the Platted Easement, this allows the owners of lots 15 through 20 to use the 1992 Easement to enter and exit their

property, which may include going through that part of the Town's property that is subject to the 1992 Easement.

¶49     It is also clear from the plain language of the 1992 Easement that it benefits only the owners of lots 15 through 20.  Here, that includes the Kasiskes and the Town.  Furthermore, and contrary to the Landowners' argument, there is nothing in the language of the 1992 Easement mentioning the ravine or any intent to allow travel past the ravine.  Given the easement's plain language and the above principle from *Grygiel*, the 1992 Easement does not give the Kasiskes the right to permit the other Landowners to use the easement to cross the Town's property to access their own properties.  Thus, only the Kasiskes have a right to use that portion of the 1992 Easement over the Town's property, and they may not grant the rest of the Landowners the right to use the 1992 Easement to cross the Town's property.

¶50     The Landowners seek to avoid the application of *Grygiel* by arguing that they were not seeking to use the easements "for the benefit of, and to travel to, a property that was *not the dominant property to which the easement was appurtenant*."  Although we agree that fact is the case for the Platted Easement, we disagree that the same distinction can be made in regards to the 1992 and 1995 Easements.  The Landowners do not contend that their use of the 1992 and 1995 Easements for the benefit of, and to travel to, their properties stems from any language in the easement grants or from any relationship with the Kasiskes and the Egglesons reflected in those two easements.  Rather, the Landowners contend that they may use those easements simply because they are part of the subdivision in which it is located.  In other words, the Landowners believe that being part of the subdivision entitles them to freely travel through the Town's property using the

1992 and 1995 Easements, but that is contrary to the express terms of those easements.

¶51 With respect to the 1992 Easement, the Landowners cannot use that easement to cross the Town's property to access their own properties. The Landowners' use of the 1992 Easement to cross the Town's property to access their own properties would enlarge the Kasiskes' property's beneficiary status to include the other Landowners' properties, just as the club member and his invitees' use of the easement to cross the plaintiff's property and hunt on non-club property in *Grygiel* enlarged the club's property to include the non-club property. In both cases, the invitees' use of the easement for the benefit of a nondominant estate "effectively enlarge[s] the dominant estate to include the [nondominant estate] contrary to established easement law." *See Grygiel*, 328 Wis. 2d 436, ¶¶32-33. Such a use of the 1992 Easement by the Landowners would not be in accordance with the express terms of the easement grant, which states that it is specifically for the benefit of lots 15 through 20, not for the benefit of lots 15 through 20 *and their invitees*. That is to say, allowing the Landowners to use the 1992 Easement to cross the Town's property to access their own properties would enlarge and extend the easement to properties for which it was not intended—i.e., properties that the easement did not specifically benefit.

¶52 As the owners of a portion of lot 15, however, the Kasiskes can allow the Landowners to use the 1992 Easement on their property. Although the language of the 1992 Easement prevents the Kasiskes from allowing invitees to use other portions of the easement, such as the Town's portion, there is nothing in the language of the grant prohibiting the Kasiskes from allowing invitees to use their portion of the easement on their land.

24

¶53    Applying the same principle from *Grygiel*, the Egglesons and Kasiskes cannot give all the Landowners the right to use the 1995 Easement to cross the Town's property in order to access their properties. The language creating the 1995 Easement states that the former owners of the southern half of lot 7 and lots 8 through 16 granted and conveyed "to each other and their heirs, successors and assigns, a thirty-three (33') wide perpetual easement for access purposes over and across the abandoned railroad right-of-way." Similar to the definitions of "ingress" and "egress," "access" means "[a] right, opportunity, or ability to enter, approach, pass to and from, or communicate with." *Access*, BLACK'S LAW DICTIONARY (11th ed. 2019). As with the Platted Easement and the 1992 Easement, the purpose of the 1995 Easement is for entry and exit to and from the southern half of lot 7 and lots 8 through 16, and it allows the owners of those lots to use the easement to go through the Town's property to reach their lots.

¶54    As with the 1992 Easement, the plain language of the 1995 Easement is clear that it was intended to benefit only the owners of the southern half of lot 7 and lots 8 through 16, given that the former owners granted and conveyed the easement only to each other and their successors. Here, those successors include the Kasiskes, the Egglesons, and the Town. Just as we noted for the 1992 Easement, the 1995 Easement similarly contains no language mentioning the ravine or any intent to allow travel past the ravine. Given the plain language of the easement and the application of *Grygiel*, only the Kasiskes and the Egglesons have the right to use the 1995 Easement to access their properties by crossing the Town's property, but they have no right to allow the other Landowners to use the 1995 Easement to cross the Town's property to access their properties.

¶55 Again, such use of the 1995 Easement would not be in accordance with its express terms. Although different from the "specifically benefit" language of the 1992 Easement, the 1995 Easement language stating that the former owners of the lots granted the easement to each other and their successors indicates that the former owners intended the easement to benefit the owners of the specific lots mentioned, not every other property owner in the subdivision. However, as we concluded for the 1992 Easement, nothing in the language of the grant prohibits the Kasiskes and the Egglesons from allowing invitees to use their portion of the easement on their land.

¶56 In all, the circuit court erred by concluding that the Kasiskes and the Egglesons could give all the Landowners the right to use the 1992 and 1995 Easements to cross the Town's property.

### C. The Town's Counterclaim

¶57 Finally regarding the grant of summary judgment, the Town argues that the circuit court erred by not ruling on the Town's declaratory judgment counterclaim that the Town raised in its summary judgment motion. The Town also contends that the court "did not rule on whether the general public could use the Town's" portion of all three easements. Because the court did not address the Town's summary judgment motion, but it dismissed the Town's counterclaim with prejudice, the Town asserts that it "cannot ever bring a declaratory judgment on any aspect regarding the easements." We disagree with the Town.

¶58 The Town never sought a declaratory judgment regarding whether the general public could use its portion of the three easements. Instead, the Town's counterclaim sought a declaratory judgment regarding the rights and limits of the Platted Easement, the 1992 Easement, and the 1995 Easement "*as they may*

26

*apply to each of the named parties*"—i.e., the Town and the Landowners. (Emphasis added.) The circuit court's decision did so here. In granting summary judgment to the Landowners, the court issued that declaratory judgment by determining each party's respective rights under the three easements. Thus, dismissing the Town's counterclaim with prejudice does not prevent the Town from bringing a declaratory judgment action regarding the three easements with respect to lot owners who were not parties to this case.

## IV. The Permanent Injunction

¶59     The Town next argues that the circuit court erroneously exercised its discretion by issuing a permanent injunction. We review a circuit court's order granting injunctive relief for an erroneous exercise of discretion. *Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO*, 2007 WI 72, ¶25, 301 Wis. 2d 266, 732 N.W.2d 828. We uphold the order if the court "examined the relevant facts, applied the proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable court could reach." *Id.* In the context of an injunction, a court erroneously exercises its discretion if it: "(1) fails to consider and make a record of the factors relevant to its determination; (2) considers clearly irrelevant or improper factors; and (3) clearly gives too much weight to one factor." *Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 471, 588 N.W.2d 278 (Ct. App. 1998).

¶60     In order to obtain an injunction, "a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure the plaintiff." *Pure Milk Prods. Coop. v. National Farmers Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979). The plaintiff must also show that the injury is irreparable—i.e., "not adequately compensable in damages." *Id.* In

considering the request for injunctive relief, "competing interests must be reconciled and the plaintiff must satisfy the [circuit] court that on balance equity favors issuing the injunction." ***Id.***

¶61 At the hearing clarifying its oral ruling, the circuit court explained that its issuance of the permanent injunction was

> an equitable remedy, actually, and it's the only remedy that will give the [Landowners] what they want and what they need, which is the full enjoyment of their property. So in that respect, money damages aren't sufficient, but I'm merely gonna find that—that harm and damages, due to blocking the easement, can't be compensated with money damages and that, therefore, the [T]own is enjoined from blocking the easements basically as property rights that are being interfered with.

¶62 The Town first contends that the circuit court ordered it to remove all obstructions blocking the three easements without finding that those obstructions actually interfered with the Landowners' easement rights. The Town questions why fencing placed by others does not interfere with the Landowners' easement rights, but the Town's fencing does. It also questions why its "easily movable fence post must be removed," but larger trees within the easement area can remain.

¶63 As noted above, a "servient estate may not unreasonably interfere with the dominant estate's right to use the easement." ***Konneker***, 326 Wis. 2d 268, ¶25. A servient owner "may make all proper use of his [or her] land including the right to make changes in or upon it," but that owner "may not unreasonably interfere with the use by the easement holder." ***Hunter v. McDonald***, 78 Wis. 2d 338, 343, 254 N.W.2d 282 (1977). "An obstruction or disturbance of an easement is anything which wrongfully interferes with the

privilege to which the owner of the easement is entitled by making its use less convenient and beneficial than before." *Id.* at 344 (citation omitted).

¶64    The circuit court found that the Landowners had easement rights under the Platted Easement, that the Kasiskes had easement rights under the 1992 Easement, and that the Egglesons and the Kasiskes had easement rights under the 1995 Easement.  The court also found that the Town placed "gates, fencing, and other appurtenances on its property within the boundaries" of the three easements, and that those fences and gates unlawfully obstructed and interfered with the Landowners' respective easement rights.  It is clear the court found that the gates and fences the Town placed within the three easements' boundaries unreasonably interfered with each Landowner's respective easement rights, given that the gates and fences blocked the easements and made each easement's use "less convenient and beneficial than before" the gates and fences were placed.  *See id.*

¶65    Additionally, the Landowners did not seek to remove every conceivable obstruction, such as large trees or other fencing, that otherwise could be within each easement's boundaries.  Nor did they argue that such obstructions unreasonably interfered with their easement rights.  The Landowners sought removal of the gates and fences that the Town had placed because those gates and fences completely blocked the easements, thereby unreasonably interfering with the Landowners' use of their respective easements.

¶66    The Town then argues that the wording of the injunction is too broad because "it is not clear whether posting signs in the location of any of the easements" would violate the injunction and because it "does not clearly define what the Town may and may not do in the future, particularly because each … Landowner may have a subjective interpretation of what conduct

interferes with their easement rights." The Town further asserts that "there is not a reasonable likelihood that this wrong will ever be repeated" because the gates and fences have been removed, which is a factor the court did not consider when issuing the injunction.

¶67    The injunction is clear as to what the Town was required to do and what it may not do—namely, the Town was required to remove the gates and fences it placed within the boundaries of the easements and it was prohibited from placing anything else that would block, obstruct, or interfere with the easements in the same manner. Signs, generally speaking, do not obstruct the use of an easement, given that signs would not block the entire easement (unless the Town intends to put up a sign that is the size of the easements).

¶68    Furthermore, the circuit court did consider the likelihood of the Town repeating its behavior, stating that "in the long term, … it's unreasonable to expect the parties to continue to have to resort to come to court if and when they decide that they're gonna exercise their rights." As the Landowners note, without a permanent injunction "nothing would stop the Town from putting gates and fencing up again in the future," and "the circuit court's judgment would be meaningless." Thus, the Town could continue to violate the Landowners' property rights if the Town were not prohibited from placing fences or gates blocking the easements and interfering with the Landowners' use of the easements. Accordingly, the court did not erroneously exercise its discretion by granting the permanent injunction.

## CONCLUSION

¶69    In all, we affirm the circuit court in regards to its decisions on the Town's motion to join necessary parties, the Town's motion for leave to file a

third-party complaint against the 17 nonparty landowners, and the issuance of the permanent injunction. We also affirm the circuit court's summary judgment decision regarding the Platted Easement and its dismissal of the Town's counterclaim. Nevertheless, we reverse the circuit court's grant of summary judgment to the Landowners with respect to 1992 and 1995 Easements. The court erred by concluding that the Kasiskes and the Egglesons could give all the Landowners the right to use the 1992 and 1995 Easements to cross the Town's property. The Kasiskes and the Egglesons may only grant rights to the other Landowners to cross over their own property but not the Town's property. Accordingly, we remand the case to the circuit court to enter an amended order consistent with this opinion.

¶70 No costs are awarded to either party.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.